IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KRISTIN ELIZABETH MACK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:17-cv-00434-O-BP |
| | § | |
| KEVIN SWEET et. al., | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are Plaintiff's Complaint (ECF No. 1), filed May 25, 2017; Plaintiff's Affidavit of Information (ECF No. 11), filed July 6, 2017; and Plaintiff's Answers to District Court's Questionnaire and Criminal Complaint (ECF No. 17), filed August 28, 2017. United States District Judge Reed O'Connor referred this case to the undersigned for pretrial management by Order entered on June 8, 2017. ECF No. 7. After considering the pleadings of the parties and applicable law, the undersigned **RECOMMENDS** that Judge O'Connor **DISMISS** this action **with prejudice**.

## BACKGROUND

Plaintiff Kristin Mack ("Mack") filed a *pro se* complaint on May 25, 2017, with accusations of fraud, tort, extortion and treason related to the 266th District Court in Stephenville, Texas. ECF No. 1 at 1. She named as Defendants Kevin Sweet ("Sweet"), Judge Jason Cashon ("Judge Cashon"), R. Shay Isham ("Attorney Isham"), Candy Perry ("Clerk Perry"), and the State of Texas. *Id*. The Court granted Mack's motion to proceed *in forma pauperis* and did not issue process, pending preliminary screening. ECF No. 6. On June 26, 2017, the Court sent a questionnaire with the purpose of clarifying her suit. ECF No. 8.

Mack first filed, on July 6, 2017, an "Affidavit of Information in support of a Criminal Complaint" that was not clear on whether it was a response to the Court's Questionnaire. ECF No. 11. Mack later filed a "Motion for Fact Finding," in which she claimed that she "responded to the court's questionnaire with Affidavit of Information . . . ," and the undersigned takes the "Affidavit of Information" to be a part of her pleadings. ECF No. 14. The "Affidavit of Information" states that, under the Federal Rules of Criminal Procedure, "[t]his complaint is a written statement [sic] of the essential facts constituting the offense charged." ECF No. 11 at 1. Mack further alleges that the Defendants (without particularizing which committed which violations) committed felonies, high crimes, and misdemeanors, including: denial of a right to due process, treason, domestic mixed war, malfeasance of office, slavery (for stealing her son, who is her property, thereby making him the Defendants' slave), fraud, extortion, grand theft, robbery, accepting false documents, conspiracy, and racketeering. *Id.* at 2–4. She attached an estimate of damages she sustained, resulting from the crimes of fraud, extortion, grand theft, conspiracy, racketeering, copyright/trademark violation, handcuffing, taking/theft/deprivation of property, jailing, unauthorized citations, summons without contract, unauthorized court fees, fingerprinting, photographing, forced giving of fluid samples, and autograph under threat, duress, or coercion. *Id.* at 6. Mack estimated the damages in the amount of $71,712,000. *Id.* She also attached to the "Affidavit of Information" copies of a schedule of fees, legal analysis concerning the "Commercial Lien," a collection of certified mail receipts, a UCC Financing Statement, and her son's birth certificate. *Id.*

As the Affidavit of Information did not clearly respond to the Court's Questionnaire, the Court twice reiterated its order for Mack to file a response. ECF Nos. 13 and 16. On August 28, 2017, Mack filed an "Answer to District Court's Questionnaire and Criminal Complaint." ECF

No. 17. In that response, Mack accused Sweet, the father of her child, of wrongful interference, false imprisonment, trespass, and invasion of privacy; Judge Cashon, the state judge who presided over her child custody case in the 266th District Court, of denying her due process and depriving her of rights under color of law; Attorney Isham, whom she calls the prosecutor in her custody case, of defamation and infliction of emotional distress for prosecuting those cases; Clerk Perry, a clerk in the court overseeing her custody case, of refusing to file her pleadings; and the State of Texas of liability for the actions of its officers, as its governor appointed Judge Cashon. *Id*. The response contained multiple appendices, including what appears to be her son's Bill of Rights homework from his school and her state-level appellate brief. *Id*.

Mack's accusations relate to her state court child custody proceedings concerning her son, L.T.M. *See id.* The Court hereby takes judicial notice of the state appellate case that contains a summary of these proceedings. *In the Interest of L.T.M.*, No. 11-15-00311-CV, 2016 Tex. App. LEXIS 13858 (Tex. App.—Eastland Dec. 30, 2016, no pet.). In that case, Sweet, L.T.M.'s father, had requested a modification of the child support order to limit Mack's access to L.T.M. *Id.* at *1–2. The state trial court modified the child support order in accordance with Sweet's request, after conferring privately with L.T.M., and noting that Mack's phone calls to L.T.M. and her accusations that his father molested and kidnapped him upset her son. *Id.* at *2. Mack challenged the trial court's order on appeal, claiming that the court abused its discretion and violated her constitutional rights, but the court of appeals affirmed the trial court's decision. *Id.* at *1, *9. Mack did not petition the Texas Supreme Court for review of the Eastland Court of Appeals's decision.

**LEGAL STANDARD**

A district court "shall dismiss" a case brought *in forma pauperis* "at any time if the court determines that . . . the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on

3

which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). To aid the court in determining whether it should dismiss an *in forma pauperis* complaint, the United States Court of Appeals for the Fifth Circuit has approved the use of questionnaires and evidentiary hearings. *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985). Responses to these questionnaires and hearings become part of the pleadings. *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996).

A *pro se* plaintiff's pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* However, if the court determines that the plaintiff has pleaded his or her best case, a district court does not err in dismissing a *pro se* complaint with prejudice. *Jones v. Greninger*, 188 F.3d 322, 326–27 (5th Cir. 1999) (citing *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).

**ANALYSIS**

**I. To the extent that Mack's pleadings make claims related to her purported status as a sovereign citizen, they are frivolous as a matter of law.**

Title 28 U.S.C. § 1915(e)(2)(i) requires dismissal of frivolous actions. An action "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A complaint lacks an arguable basis in law "if it is based on an indisputably meritless legal theory," and it lacks an arguable basis in fact "if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib*, 138 F.3d 211, 213. Baseless allegations include those that are fanciful, fantastic, delusional, irrational, or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992). The statute gives judges "the unusual power to pierce the veil of the

complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* at 32 (1992) (citing *Neitzke*, 490 U.S. at 327).

Sovereign citizen legal arguments like those found in Mack's pleadings are indisputably meritless. So-called sovereign citizens argue that, though they are born and reside in the United States, they are their own sovereigns and are not United States citizens. *Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011). They claim as grounds for this belief: the Uniform Commercial Code, maritime and admiralty law, the idea of strawman trusts, and Bible verses. *E.g., Mason v. Anderson*, CV H-15-2952, 2016 WL 4398680, at *2 (S.D. Tex. Aug. 18, 2016). Sovereign citizens often attempt to use these beliefs to "avoid paying taxes, extinguish debts, and derail criminal proceedings." *Gravatt*, 100 Fed. Cl. at 282.

It is common for sovereign citizens to utilize particular frivolous legal theories, such as claiming to copyright their own names and filing supposed UCC financing statements that exempt them from taxation by becoming a "secured party" or "secured creditor." *See, e.g., Berman v. Stephens*, 4:14-CV-860-A, 2015 WL 3622694, at *2 (N.D. Tex. June 10, 2015) (collecting cases); *United States v. Exinia*, 1:15-CV-41, 2015 WL 12841096, at *4–5 (S.D. Tex. Oct. 9, 2015) ("[T]he sovereign-citizen theories espoused by [the plaintiff] in the financing statements and in his briefing are meritless."); *Hodson v. Moore*, 2:15-CV-453, 2016 WL 5341926, at *5 (S.D. Tex. Sept. 23, 2016) (noting that a prison mailroom identified documents that reference the UCC or describe how to copyright a person's name as sovereign citizen materials). Sovereign citizens assert that they can file commercial liens against public officials for their grievances, but courts have rejected these claims for years. *West v. Enns*, 2:16-CV-0118, 2017 WL 2313469, at *3 (N.D. Tex. Apr. 27, 2017), report and recommendation adopted, 2:16-CV-0118, 2017 WL 2313866 (N.D. Tex. May 26, 2017). These citizens cannot claim to be sovereigns independent of governmental authority while

5

they simultaneously ask the judicial system to grant them recourse. *Mason*, CV H-15-2952, 2016 WL 4398680, at *2.

Mack's filings in this case are replete with identifying characteristics of the sovereign citizen movement. In her original complaint, she refers to herself almost exclusively as "Kristin Mack © ™." ECF No. 1. She identifies herself as a "natural woman and free inhabitant on the land, Private American National, Secured Party. . . ." *Id.* at 1. She claims that "[s]ince I'm the beneficiary for the estate of KRISTIN MACK, and NO law was established, I do have proper jurisdiction over this case." *Id.* at 3. Mack says she has "filed a Universal Construction Contract and claimed my Chattel, [L.T.M.], A VESSEL, PREVIOUSLY OWNED BY ARIZONA CORPORATION AND NOW OWNED BY PLAINTIFF, Kristin Mack." *Id.* Mack attached a UCC-1 Financing Statement to her pleadings, in which she claims her son as her chattel. *Id.* at 10. She claims that her son must be returned to her as he is her property, and that she is owed damages for every day that he is kept from her. *Id.* at 3. Her "Affidavit of Information" is styled as an "INTERNATIONAL COMMERCIAL LIEN" and is "in support of a CRIMINAL COMPLAINT." ECF No. 11 at 1. To this document she appended a piece of legal analysis on the "Commercial Lien" that gives as its legal authority "Universal moral/existential truths/principles, expressed in Judaic (Mosaic) Orthodox Hebrew/Jewish Commercial Code, corollary to Exodus (chiefly Exodus 20:15, 16). This is the best known Commercial process in America." *Id.* at 11. These statements, which claim that she is a private national and a secured party with jurisdiction over her own criminal complaint and give for her commercial lien the legal authority of the UCC and the Bible, exhibit the hallmarks of the sovereign citizen movement.

Unlike her original complaint and her "Affidavit of Information," Mack's Answer to District Court's Questionnaire and Criminal Complaint is almost entirely free from such legally

invalid arguments, other than reasserting that she claimed her son on her UCC-1 financing statement and titling her response as a criminal complaint, which, as previously analyzed, she as a private citizen is unable to make. ECF No. 17 at 2; *Mass*, CIV.A.3:04-CV-0483-M, 2004 WL 2624255, at *5. But insofar as Mack grounds her allegations in sovereign citizen legal theory, her complaint is legally frivolous. *E.g. West v. Enns*, 2:16-CV-0118, 2017 WL 2313469, at *3 (dismissing under 28 U.S.C. 1915(e)(2) a lawsuit, filed as "a criminal complaint as an Affidavit of Truth and a claim of lien" by a "'vessel' and not a 'citizen,'" as frivolous and failing to state a claim). Sovereign citizen legal theories are not valid in the courts of the United States, and the undersigned thus recommends her case be dismissed as frivolous.

## II. Mack's claims in her complaint are legally insufficient to state a claim.

Title 28 U.S.C. § 1915(e)(2)(ii) requires a court to dismiss an action brought *in forma pauperis* if it fails to state a claim upon which relief may be granted. Dismissal under Section 1915(e)(2)(ii) follows the same standard applicable to dismissals under Federal Rule of Civil Procedure 12(b)(6). *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (citing *Praylor v. Tex. Dep't of Criminal Justice*, 430 F.3d 1208, 1209 (5th Cir. 2005)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). It must also include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to decide whether the pleadings state a claim upon which relief can be granted, courts "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Over the course of her pleadings and responses to the Court's questionnaire, Mack alleges dozens of civil and criminal violations against the Defendants. ECF Nos. 1, 11, and 17. Her original complaint and "Affidavit of Information" state violations ranging from fraud to copyright violation to treason. ECF Nos. 1 and 11. However, in neither document does she specifically tie violations to particular defendants. *See id.* Nor does she state facts in support of the violations that would establish all, and in most cases any, of the elements of the cause of action, instead giving "[t]hreadbare recitals of the elements" or only the name of the violation without further support of any kind. *See id.*; *Iqbal*, 556 U.S. at 678. Even under the liberal construction that the Court gives to *pro se* pleadings, these two documents fail to state any claims upon which relief could be granted. *See Estelle*, 429 U.S. at 106.

Mack's Answer to the Court's questionnaire more particularly ties particular violations to particular defendants, though the violations alleged in this filing are almost entirely distinct from those alleged in her original complaint. ECF No. 17. In addition, the facts she alleges concerning these violations have no relevance to the actual elements of the offense. For example, she accuses Sweet of, among other violations, wrongful interference and trespass to property. *Id.* at 1–2. Sweet allegedly committed wrongful interference by concealing Mack's son from her using the state court custody proceedings. *Id.* But wrongful interference, more commonly called tortious interference, is a concept within contract law that allows a party to recover damages after a breach of contract. *See Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 629 (N.D. Tex. 2010). Wrongful interference is entirely irrelevant to a domestic relations dispute in which there is no

contract. Mack also alleges that Sweet trespassed on Mack's property by taking custody of their son. ECF No. 17 at 2. Mack does not plead facts that establish the elements of trespass under Texas law, which are: (1) plaintiff owns, or had a legal right of possession, on the alleged property; (2) defendant entered the property, and said entry was physical, intentional, and voluntary; and (3) defendant's trespass caused injury to plaintiff. *Hillman v. City of McKinney*, 70 F. Supp. 3d 790, 803–04 (E.D. Tex. 2014). Nor can she, as the property she claims Sweet trespassed upon is her son, rather than a piece of land or other real property. Of course, the more fantastical aspect of this claim is Mack's assertion that her son is her property, a conception that the Constitution has barred since after the Civil War. U.S. Const. amend. XIII; *see also Lamar Advert. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 660 (5th Cir. 2005) ("[W]e flatly reject the remarkable notion that people are property."). Her other claims are similarly defective and fail to state a claim upon which relief can be granted, so the undersigned recommends dismissal under 28 U.S.C. § 1915(e)(2)(ii).

### III. Mack's claims against Judge Cashon, Attorney Isham, Clerk Perry, and the State of Texas must be dismissed as these Defendants are immune from relief.

Title 28 U.S.C. § 1915(e)(2)(iii) requires courts to dismiss an action if it "seeks monetary relief against a defendant who is immune from such relief." Under the Eleventh Amendment, states are immune from suit in federal court unless they unequivocally consent to the suit or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984). This sovereign immunity extends to state agencies and, if the relief sought would operate against the state, to state officials. *Id.* at 101.

Judges have absolute immunity from civil actions for any judicial act over which they have jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (citing *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). Judicial immunity is an immunity from suit, not just from the ultimate assessment of

damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Allegations of bad faith or malice do not overcome judicial immunity. *Id.* A judge's judicial immunity does not extend to (1) nonjudicial actions, that is, "actions not taken in the judge's official capacity"; or (2) judicial actions "taken in the complete absence of all jurisdiction." *Id.* Courts are to construe jurisdiction broadly for purposes of judicial immunity. *Adams v. McIlhany*, 764 F.2d 294, 299 (5th Cir. 1985) (citing *Stump*, 435 U.S. at 356–57).

Relatedly, court clerks and prosecutors have immunity for actions taken in the scope of their professional duties. Court clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction . . . ." *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981). Clerks enjoy "only qualified immunity for those routine duties not explicitly commanded by a court decree or by the judge's instructions." *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001). Prosecutors have absolute immunity for initiating and presenting the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 422 (1976). This immunity "is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties." *Id.* at 422–23.

The state officials whom Mack accuses of various torts or crimes all have immunity from those accusations, as she sues them for actions taken in their official capacity. She repeatedly refers to these state officials as Sweet's "crime team," as she believes that Judge Cashon, Attorney Isham, and the 266th District Court aided Sweet in kidnapping her son, as opposed to performing their official duties in a family-law matter. ECF No. 17 at 1. Mack accuses Judge Cashon of defamation, infliction of emotional distress, and false imprisonment resulting from his adverse ruling against her in her state court proceeding. *Id.* at 5. She additionally accuses him of signing the order to change her son's name without her permission. *Id.* at 6. But these are judicial acts, or consequences

of official acts, for which Cashon has official immunity. She also claims that he denied her due process in the state court over which he presides, though she does not indicate what specific violations of due process occurred or how these violations give rise to liability in federal court. *Id.* These accusations do not rebut judicial immunity and are legally frivolous.

Mack's accusations against Attorney Isham, whom she calls the prosecutor in her state case, are that he "committed defamation by sending a habeas corpus to my place of employment . . . among other related crimes and damage inflicting emotional distress" and that "he signed every tortuous act committed by Kevin Sweet and his crime team." *Id.* at 4. These are not well-pleaded allegations. In the first place, it is unclear how Attorney Isham could be a prosecutor in a family custody case, as these cases do not generally involve prosecutors. *See Prosecutor*, Black's Law Dictionary (10th ed. 2014) (defining prosecutor as a "legal officer who represents the state or federal government in criminal proceedings"). Certainly, if Attorney Isham were the prosecutor in her case, then he would enjoy prosecutorial immunity for any actions taken in prosecuting that case. Even if he were not, there do not appear to be sufficient facts pleaded that show how he committed any violation related to Mack's confusingly stated accusations.

Mack accuses Clerk Perry of refusing to file her pleadings electronically because Mack did not submit payment, and this refusal constitutes "crimes against justice under statues [sic] at large section 5403." ECF No. 17 at 5. Mack claims that Clerk Perry is therefore responsible "for the fines due." *Id.* Clerk Perry has qualified immunity for the routine clerical action of refusing to file without payment, immunity that Mack does not attempt to rebut. Beyond immunity, this claim is legally frivolous as her the accusation appears to be made under a 19th-century criminal statute no longer in force:

> Section 5403 declares that every person who willfully destroys, or attempts to destroy, or with intent to steal or destroy, takes and carries away any record, paper,

11

> or proceeding of a court of justice, filed or deposited with any clerk or officer of said court, or any paper, or document, or record, filed or deposited with any such public officer, or with any judicial or public officer, shall, without reference to the value of the record so taken away, be punished . . . .

*Mackin v. United States*, 23 F. 334, 337 (C.C.N.D. Ill. 1885), *certified question answered*, 117 U.S. 348 (1886); *cf.* 18 U.S.C. § 2071 (the destruction of records statute currently in force). Even were this statute still in force, Mack is a private citizen of the United States and cannot enforce criminal statutes in a civil action. *Mass v. McDonald's Corp.*, CIV.A.3:04-CV-0483-M, 2004 WL 2624255, at *5 (N.D. Tex. Nov. 12, 2004). The power to initiate a federal criminal prosecution is vested exclusively in the executive branch. *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 635 (N.D. Tex. 2007) (citing *United States v. Nixon*, 418 U.S. 683, 693 (1974)). And Mack has not accused Clerk Perry of stealing or destroying a judicial record or proceeding, but of refusing to file one, which is conduct different from that made illegal under the statute.

Mack asserts that the State of Texas is liable for the actions of Judge Cashon, as "Texas' appointed officer, Rick Perry, appointed Jason Cashon as a judge." ECF No. 17 at 3. Perhaps in an attempt to avoid the sovereign immunity that applies to actions filed against the State of Texas, Mack asserts that "Texas is a corporation" and its officials are officers of that corporation, and thus Texas is vicariously liable "due to the wrongful actions of their officers possibly committing crimes on their land trespassing on property and rights." *Id.* at 4. Such a legal theory is clearly frivolous: Texas is a sovereign state of the United States of America, not a corporation. It cannot be sued for the actions of its officials (who are not corporate officers) unless it consents, as required by the Eleventh Amendment to the United States Constitution. The State of Texas has not consented to this suit and therefore it is immune from suit for the actions of its officers, even if the state officials Mack has sued did not already have immunity.

Mack has requested over $71 million in damages from the Defendants. ECF No. 1 at 6. Because Judge Cashon, Attorney Isham, Candy Perry, and the State of Texas have immunity from damages—and, where noted above, from suit—for the actions of which Mack complains, the undersigned recommends dismissal of the claims against them pursuant to 28 U.S.C. § 1915(e)(2)(iii).

IV. **Mack's tort claims against Sweet are for state actions, not actions Sweet himself took, and her arguments that he is liable for them are frivolous.**

While Sweet is not a state official, Mack's tort claims against him are for state actions rather than any actions Sweet himself took. Her accusation of wrongful interference is that Sweet's "crime team"—the court officials at the 266th District Court—interfered with her relationship with her son by modifying her child custody order. ECF No. 17 at 1–2. Her accusation of false imprisonment against him appear to relate to the twelve days that Mack allegedly spent in jail, possibly in relation to her child custody battle, after allegedly being arrested by the FBI. *Id.* at 2. However, Sweet himself does not seem to have been the one to imprison her, and to argue that he is liable for the government imprisoning her is legally frivolous. Her next accusation is that Sweet trespassed on her property by taking custody of her son, who is her property. *Id.* This accusation is a denial of the validity of the adverse judgment of the state court that modified her custody order, not an accusation against Sweet—and, as previously noted, is based on the meritless legal theory that people can be property. Finally, her accusation against Sweet for invasion of privacy derives from the allegation that he published her name and picture in a publicly accessible criminal database. *Id.* at 2. It is clearly a frivolous legal argument to suggest that, by being a party to a case that in some unstated fashion led the state to place Mack in a criminal database, a private citizen like Sweet is liable to her for the state's action in publishing her entry in a criminal database. While Sweet has no official state immunity, the proper defendants in all of these accusations—that is, the

state and its officials—do have such immunity. And Sweet himself cannot be liable for these supposed violations under any reasonable legal theory, as he did not commit any of the accused acts. Finally, as previously noted in Part II, Mack does not give facts sufficient to establish the elements of any of the torts she claims Sweet committed. The undersigned therefore recommends dismissal of Sweet from this action.

V. **Dismissal with prejudice is appropriate in this case, as Mack has had the opportunity to plead her best case.**

A district court must generally afford a *pro se* plaintiff an opportunity to amend before dismissing for failure to state a claim. *Gregory v. McKennon*, 430 Fed. App'x. 306, 308 (5th Cir. 2011) (per curiam) (citing *Bazrowx*, 136 F.3d at 1054). The central ways of focusing a *pro se* plaintiff's claims are holding a *Spears* hearing and requesting a more definite statement through a questionnaire. *Id.* (citing *Spears*, 766 F.2d at 181–82; *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994)). Where the Court determines that a *pro se* plaintiff has had the opportunity to state his best case, the Court may dismiss his complaint, in part or as a whole, with prejudice. *See, e.g., id.*; *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (citing *Bazrowx*, 136 F.3d at 1054) (affirming the district court's dismissal with prejudice where the *pro se* plaintiff's response to a questionnaire showed he had pleaded his best case); *Cobb v. Simmons*, 373 Fed. Appx. 469, 470 (5th Cir. 2010) (affirming dismissal with prejudice where *pro se* plaintiff's questionnaire and objections to magistrate judge's recommendation showed he had pleaded his best case); *Hunter v. Wilson*, 3:16-CV-1289-L-BN, 2016 WL 9781808, at *2–4 (N.D. Tex. Sept. 16, 2016), report and recommendation adopted, 3:16-CV-1289-L, 2017 WL 4539431 (N.D. Tex. Oct. 11, 2017).

As the Court required clarification on the claims found in her original complaint, the Court requested that Mack answer a questionnaire. ECF No. 8. She first responded with an "Affidavit of Information," and a later motion made clear that Mack intended this document to be a response to

the Court's questionnaire. ECF Nos. 11 and 14. After the Court twice requested an appropriate response specifically answering the questions in the questionnaire, Mack filed a second response with multiple appendices. ECF No. 17. Though these three lengthy filings contain dozens of nebulous claims of violations, not a single one constitutes a legally cognizable claim that would survive dismissal under 18 U.S.C. § 1915(e)(2). Mack has had every reasonable opportunity to plead her case, and she has not been able to state a non-frivolous claim upon which relief could be granted by this Court. The undersigned therefore recommends dismissal of this action with prejudice. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir.1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.").

## CONCLUSION

After considering the pleadings of the parties and applicable law, the undersigned **RECOMMENDS** that Judge O'Connor **DISMISS** this action **with prejudice**.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed December 4, 2017.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE